1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICKSON-HALL CONSTRUCTION COMPANY, a California Corporation,<br><br>                                        Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation, and HARTFORD FIRE INSURANCE COMPANY, a Connecticut Corporation,<br><br>                                        Defendants. | Case No.:  18-CV-2462-GPC-MSB<br><br>**ORDER**<br><br>**(1) GRANTING SCOTTSDALE INSURANCE COMPANY'S MOTION TO DISMISS [ECF No. 14];**<br><br>**(2) GRANTING HARTFORD FIRE INSURANCE COMPANY'S MOTION TO DISMISS [ECF No. 17];**<br><br>**(3) DENYING AS MOOT ERICKSON-HALL CONSTRUCTION COMPANY'S EX PARTE MOTION [ECF No. 18].** |

   Pending before the Court are three motions related to an insurance dispute.  The first motion is Defendant Scottsdale Insurance Company's ("Scottsdale's") motion to dismiss Plaintiff Erickson-Hall Construction Company ("EHCC's) first amended

complaint ("FAC"). (ECF No. 14.)[1] This motion has been fully briefed. (ECF Nos. 2, 24.) The second is Defendant Hartford Fire Insurance Company's ("Hartford's") motion to dismiss EHCC's FAC (ECF No. 17), which has also received the benefit of full briefing. (ECF Nos. 25, 26.) The final motion at issue is EHCC's *ex parte* motion for an order setting or amending the briefing schedule on the pending Rule 12(b) motions (ECF No. 18), which has been opposed by Scottsdale. (ECF No. 20.)

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons set forth below, the Court **GRANTS** both motions to dismiss with leave to amend and **DENIES** as moot EHCC's *ex parte* motion.

## I. Background

### A. Factual Background

#### 1. EHCC

Plaintiff Erickson-Hall Construction Company is a California Corporation with approximately 150 employees. EHCC "competes for highly talented employees by offering its employees certain employment benefits in addition to its compensation packages." (ECF No. 10, at 3.) One of the benefits EHCC offers is company paid Life Insurance, Accidental Death and Dismemberment Insurance and Long Term Disability Insurance (collectively, the "EHCC Benefit Plans"). (*Id.*). The EHCC Benefit Plans are purchased by EHCC for its employees from a third-party insurance company.

---

[1] Also pending on the docket is Scottsdale's motion to dismiss EHCC's original complaint. (ECF No. 6.) Thereafter, EHCC amended its complaint as a matter of course, rendering that motion to dismiss moot. *See Anderson v. Bank of Am., N.A.*, No. 215CV00198EJLREB, 2016 WL 7494304, at *1 (D. Idaho Jan. 13, 2016) ("When a plaintiff filed its an amended complaint as a matter of course, the amended complaint becomes the operative complaint and renders any pending motions to dismiss moot."); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) (An "'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'"). Accordingly, the Court hereby **denies** Scottsdale's initial motion to dismiss. (ECF No. 6.)

EHCC employees are also presented with the option to purchase additional coverage under the EHCC Benefit Plans. Employees have been made to understand that the additional coverage would be paid for directly from their paychecks, and that payments would be administered by EHCC. (*Id.*)

EHCC employed a non-executive level Controller with a background in accounting to oversee the operation of the EHCC Benefit Plans. (*Id.* at 7.) The Controller was the primary person responsible for informing employees about their eligibility for, and the scope of any of the EHCC Benefit Plans which EHCC offered to purchase on the employees' behalf. The Controller was tasked with enrolling employees (by providing third party insurance companies the information required to enroll and maintain coverage), deducting from employees' paychecks moneys to pay premiums for the additional coverages which employees elected to purchase, as well as paying premiums for the ordinary coverage offered as part of the EHCC Benefit Plans. The financial part of the Controller's responsibilities included receiving and processing premium invoices from the third-party insurance companies and responding to any late payment notifications sent.

## 2. The Scottsdale Policy

To guard against the incidents of its administration of the EHCC Benefits Plans, EHCC purchased a "Business and Management Indemnity Policy" from Scottsdale (the "Scottsdale Policy"), which was effective between August 15, 2016 to August 15, 2017. (*Id.* at 4.) Scottsdale is organized under the laws of Ohio, and is a subsidiary of Nationwide Mutual Insurance Company ("Nationwide"), also of Ohio.

The Scottsdale Policy included a Fiduciary Coverage Section that ensured that Scottsdale would indemnify EHCC for any "Loss" which EHCC "become[s] legally obligated by reason of a Claim . . . for any Wrongful Act." (ECF No. 10-1, at 30, 96.). A "Claim" encompasses any "written demand for damages or other relief against [EHCC]," and a Wrongful Act is defined to include:

- Allegations of a breach of the responsibilities imposed on the fiduciaries of a "Sponsored Plan"[2] by the Employee Retirement Income Security Act of 1974 ("ERISA");

- Any matter "claimed against [EHCC] solely because of the service of [EHCC] as a fiduciary of a Sponsored Plan,"; or

- "[A]ny actual or alleged act, error or omission in the Administration of any Sponsored Plan."

(ECF No. 10-1, at 32.)  With respect to the third category of Wrongful Act, "Administration" is defined to include:

- "enrolling, terminating or canceling employees under any Plan";

- "providing interpretations with respect to any Plan";

- "counseling employees, beneficiaries or Plan participants" about benefit Plans; or

- "handling records in connection with any Plan."

(*Id.* at 30.).

### 3. The Hartford Policy

EHCC also secured a "Special Multi-Flex Business Insurance Policy" with Hartford that was effective between August 15, 2016 and August 15, 2017 (the "Hartford Policy").  Hartford is a company organized under the laws of Connecticut.

The Hartford Policy included an Employee Benefits Liability Coverage Endorsement, pursuant to which Hartford agreed to "pay those sums that [EHCC] shall become legally obligated to pay as damages because of 'employee benefits injury' to which this endorsement applies."  (ECF No. 10-2, at 40.)  "Employee benefits injury" is

---

[2]    A "Sponsored Plan" is defined to include any employee benefit plan as defined by ERISA or "any other employee benefit plan or program not subject to Title 1 of [ERISA] . . . sponsored by [EHCC] for the benefit of the employees of [EHCC]," or any "employee benefit plan . . . sponsored by [EHCC] for the benefits of [its] employees."  (ECF No. 10-1, at 31.)

further defined as "any injury that arises out of any negligent act, error, or omission in the 'administration' of EHCC's 'employee benefits program.'"[3]  (*Id.* at 42.)

"Administration," as defined in relation to an employee benefits program, encompasses both:

- "Giving counsel" to EHCC's employees and beneficiaries with respect to interpreting the scope of EHCC's employee benefits program or the employees' eligibility to participate in such programs, and;

- "Handling records in connection with an 'employee benefits program.'"

(*Id.* at 42).

### 4.  The Lapse in Premium Payments

Unbeknownst to anyone else at EHCC, the Controller failed to make the premium payments required to maintain and renew the EHCC Benefit Plan and coverage terminated as of January 1, 2016.  (ECF No. 10, at 8.)  According to EHCC, the lapse in coverage resulted from the Controller's negligent administration of, and mishandling of records related to, the EHCC Benefit Plans—the Controller did not "adequately and timely transfer[] and administer[]" the "premium payments collected from employees." (*Id.* at 8.)

Even after the termination of coverage, the Controller did not notify anyone at EHCC that the EHCC Benefit Plans had lapsed, and did not inform EHCC employees that they were no longer enrolled or participating in the EHCC Benefit Plans.  It is further alleged that, had the Controller taken reasonable steps to counsel and inform EHCC's employees about the lapse of their EHCC Benefit Plans, EHCC employees may have been able to take remedial actions to renew the EHCC Benefit Plans.  In addition, it is

---

[3]      "Employee benefits program" is further defined to include "group life insurance," "group accident or health insurance," and "disability benefits."  (ECF No. 10-2, at 42.)

alleged that, had the Controller taken reasonable steps to inform EHCC about the EHCC Benefit Plans, then EHCC would have had an opportunity to reinstate the EHCC Benefit Plans before incurring losses that would have been covered thereunder. EHCC maintains the Controller's actions were both unreasonable and negligent, but never "intentional." (*Id.* at 9.)

Thereafter, three of EHCC's employees (i.e., the "Employment Claimants") suffered injuries or death that the Employment Claimants and/or their beneficiaries claimed would have been covered by the EHCC Benefit Plans if the EHCC Benefit Plans had been properly administered. (*Id.*). Upon being informed that their EHCC Benefit Plans were not in effect, each Employee Claimant submitted written demand letters (constituting the "Underlying Claims") to EHCC seeking payment of the benefits they would have been entitled to recover under the EHCC Benefit Plans had they been in effect.

EHCC settled all three Underlying Claims without litigation. One of the Underlying Claims was resolved by purchasing a cash value replacement plan that would provide an equivalent benefit to that which would have been due under the EHCC Benefit Plan, had it been in effect. The other two Underlying Claims were settled for payments of the anticipated values of the EHCC Benefit Plans, had they been in effect. The total cost of settling the three Underlying Claims was in excess of $200,000. In addition to that outlay, EHCC suffered losses arising from the defense and negotiation of the settlements.

### 5. Denials of Coverage

On or about March 21, 2017, EHCC submitted a timely claim to Scottsdale seeking coverage and indemnification for the Underlying Claims. (*Id.* at 8.) In response, a

representative from Scottsdale[4] denied the claim by a letter dated May 23, 2017. After the denial, Scottsdale made a series of document requests to EHCC. EHCC alleges that these requests did not arise out of a genuine, good faith investigation into EHCC's claim, but were rather disguised attempts to create a record supporting its decision to deny.

EHCC submitted a similar claim to Hartford, which was denied by a letter dated April 26, 2017. (*Id.* at 9.) Following the denial, EHCC sought a reason for the denial and offered to provide additional information supporting coverage. On September 11, 2017, Hartford issued a letter which stated that it had forwarded EHCC's information on to another department for further review, but that its "coverage position remain[ed] unchanged at this time." (*Id.* at 11.) After several later attempts by EHCC to obtain further review of its coverage request, Hartford re-confirmed its decision denying coverage on February 1, 2018. In that letter, Hartford advised EHCC that it would revisit the coverage decision "[s]hould a lawsuit be filed in this matter," and if EHCC submits a copy of that suit. (*Id.*) EHCC alleges that Hartford never conducted a good faith investigation into EHCC's claim.

### B. Procedural Background

EHCC sued Scottsdale and Hartford (collectively, "Defendants"), in federal court on October 25, 2018. After Hartford filed its initial motion to dismiss EHCC's original complaint on December 11, 2018, EHCC amended its complaint as a matter of course. FED. R. CIV. P. 15(a)(1)(B).

The operative complaint, i.e., the FAC, states three causes of action against both Defendants: breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. Each of the three causes of action is bottomed on

---

[4]     Nationwide is alleged to have been acting for Scottsdale with respect to EHCC's claim. For the sake of simplicity, the Court will refer to any actions conducted by Nationwide on behalf of Scottsdale as the actions of Scottsdale.

Defendants' denial of EHCC's insurance claim and their failures to indemnify EHCC for the settlement of the Underlying Claims.  Specifically, EHCC alleges that Defendants had breached their contractual duty to "provide indemnification and coverage for the losses incurred by EHCC arising from negligent acts performed in the administration of the EHCC Benefit Plans." (ECF No. 10, at 12.)  Under EHCC's reading of the insurance agreements, Defendants were obliged to indemnify losses arising from the Controller's "failure to take reasonable steps to maintain the EHCC Benefits Plans and to inform EHCC employees about the lapsed status of the EHCC premium payments, [his] mishandling of records, paycheck deductions, premium payments, and renewal notices in connection with EHCC Benefit Plans." (*Id.*)

On December 27, 2018, EHCC filed a motion with Magistrate Judge Berg, requesting that an Early Neutral Evaluation Conference take place prior to any briefing on any motions to dismiss that may be filed.  (ECF No. 12.)   While that motion was pending, Scottsdale and Hartford filed their respective motions for dismissal pursuant to Rule 12(b)(6).  (ECF Nos. 14, 17.)  On January 15, 2019, Plaintiff filed an *ex parte* motion for a briefing schedule on the motions to dismiss that would take into accounts to its motion for an early ENE conference.  (ECF No. 18.)  Later, on January 18, 2019, Judge Berg denied EHCC's request for an early ENE conference.  (ECF No. 22.)  The Court will first address EHCC's *ex parte* motion before turning to the motions to dismiss.

## II.   EHCC's *ex parte* Motion

EHCC's *ex parte* motion requests two things of the Court.  First, it asks that the Court issue a briefing schedule that would allow for resolution of EHCC's motion for an early ENE conference before any briefing on any Rule 12(b)(6) motions take place. (ECF No. 18, at 2.)  However, as mentioned *supra*, EHCC's request for an early ENE was denied by order of Magistrate Judge Berg on January 18, 2019.  Thus, EHCC's related ex parte motion for a briefing schedule which would take into account the motion for an early ENE is **denied as moot**.

8

Second, at the time EHCC filed its *ex parte* motion, Hartford had not filed its motion to dismiss the FAC.  Instead, Hartford had elected to oppose the allegations in the FAC through its reply in support of its motion to dismiss EHCC's *original* complaint.  (ECF No. 15.)  In light of this procedural oddity, EHCC's *ex parte* motion also requested an opportunity to respond to the arguments raised by Hartford's reply—i.e., to file a sur-reply.  (ECF No. 18-1, at 4–6.)  However, on the same day that EHCC filed its *ex parte* motion, Hartford filed its motion to dismiss EHCC's FAC.  And EHCC thereafter was provided with an opportunity to oppose Hartford's arguments regarding the allegations in its FAC.  (*See* ECF No. 25.)  That being the case, EHCC's request for an opportunity to file a sur-reply is also **denied as moot.**

## III.  Defendants' Motions to Dismiss

Defendants argue that EHCC's FAC fails to state a claim upon which relief may be granted with respect to all three of its causes of action—breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment.  Although Defendants have submitted separate motions to dismiss based on the particularities of their respective agreements with EHCC, their arguments are both premised on the claim that a failure by EHCC to pay insurance premiums is not a covered event.  Without coverage, Defendants argue, there can be no claim for breach of contract, declaratory judgment, or breach of the implied covenant of good faith and fair dealing.

### A. Legal Standard Applicable to a Rule 12(b)(6) Motion

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While a plaintiff need not give "detailed factual

allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Additionally, the Court is not "required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

## B. Breach of Contract Claim

EHCC claims that Defendants violated the terms of their insurance policies by shirking their duties to defend and indemnify EHCC for losses arising from the Employee Claimants' demand letters. (ECF No. 10, at 13.) Before delving into the merits of such a claim, the Court finds it useful to delineate the obligations contemplated by the duties to defend and to indemnify and to set out the general interpretive canons applicable to insurance policies.

### 1. Duty to Defend and Indemnify

"The duty to indemnify and the duty to defend are 'correlative.'" *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (2001). Generally, the duty to defend "entails the rendering of a service, viz., the mounting and funding of a

defense," *id.* (quoting *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 58 (1997)), and such duty "may arise as soon as damages are sought in some amount." *Aerojet-General Corp.*, 17 Cal. 4th at 70. The duty to indemnify, in contrast, "entails the payment of money" after damages are fixed in their amount. *Id*. at 56. However, "[a]lthough correlative, the duty to indemnify and the duty to defend are not 'coterminous.'" *Certain Underwriters*, 24 Cal. 4th App. at 958 (quotation marks and citation omitted). "Whereas the duty to indemnify may indeed be broad, the duty to defend must perforce be broader still, . . . . With this result: Where there is a duty to defend, there *may* be a duty to indemnify; but where there is no duty to defend, there *cannot be* a duty to indemnify." *Id.*

"[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). "The burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage," and "the burden is on the insurer to prove that claim covered falls within an exclusion." *Royal Globe Ins. Co. v. Whitaker*, 181 Cal. App. 3d 532, 537 (1986); *see also Weil v. Fed. Kemper Life Assurance Co.*, 7 Cal. 4th 125, 148 (1994) (To establish coverage under an insurance policy, the insured must show that the occurrence on which the claim is based falls within the scope of basic coverage.)

Although EHCC seems to dispute that it carries the burden of establishing that the underlying claims arose out of an administration of the Plan at the Rule 12(b)(6) stage (*see* ECF No. 23-1, at 23), the burden unquestionably rests on its shoulders. Indeed, it has been remarked that "[a]n insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment." *Roberts v. Assurance Co. of Am.*, 163 Cal. App. 4th 1398, 1407 (2008), *as modified*, (June 20, 2008). Thus, the insured must make "a prima facie showing . . . that the underlying action fell within coverage provisions." *Maryland Cas. Co.*, 48 Cal. App. 4th 1822, 1831 (1996).

Where a third-party claim is involved, "the test is whether the underlying action for

which defense and indemnity is sought potentially seeks relief within the coverage of the policy." *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal. 4th 27, 44 (1994) (emphasis omitted). Thus, an insurer must defend against a suit even where the evidence suggests but does not conclusively establish that the loss is not covered. *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 286 (2014).

In this respect, it is important to note that the "potential" for coverage refers to the fact that the insurer must defend the insured with respect to the underlying claim—so long as it is covered—even if the underlying claim itself rests on shaky ground. *See Cal. Ins. Guarantee Assn. v. Wood*, 217 Cal. App. 3d 944, at 948 (1990) ("Where there is coverage an insurer must defend even though the insured may ultimately prove the [underlying] case to be legally meritless."); *N. Am. Bldg. Maint.*, 137 Cal. App. 4th at 637 ("The insurer must defend any claim that would be covered *if it were true*, even if in fact it is groundless, false, or fraudulent." (emphasis added)). However, if the underlying claim is not of the kind that is encompassed within policy coverage, "the mere existence of a legal dispute does not create a potential for coverage." *Griffin Dewatering Corp. v. Northern Ins. Co of New York*, 176 Cal. App. 4th 172, 209 (2009).

As the California Supreme Court has stated, "the duty to defend, although broad, it is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300 (1993)). "Stated in another way, 'the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" *N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 637 (2006) (quoting *Montrose Chem.*, 6 Cal. 4th at 300).

### 2. Insurance Contract Interpretation Principles

Under California law, courts interpret coverage provisions "broadly, in order to protect the objectively unreasonable expectations of the insured." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 692, 913 P.2d 878 (1995), *as modified on denial of reh'g* (Aug. 31, 1995). However, "when an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded." *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994) (quotation marks and citation omitted). And, "although exclusions are construed narrowly and must be proven by the insurer, the burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage." *Id.*

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Superior Ct.*, 2 Cal.4th 1254, 1264 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Id.* If contractual language is clear and explicit, it governs. *Id.* "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller*, 11 Cal. 4th at 18. The fact that a term is not defined in the policies does not make it ambiguous. *N. Am. Bldg. Maint.*, 137 Cal. App. 4th at 638. Nor does "[d]isagreement concerning the meaning of a phrase," or "the fact that a word or phrase isolated from its context is susceptible of more than one meaning," give rise to ambiguity. *Castro v. Fireman's Fund Am. Life Ins. Co.,* 206 Cal. App. 3d 1114, 1120 (1988). "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then,"—and only then— "invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *La Jolla Beach & Tennis Club*, 9 Cal. 4th at 37. But "[c]ourts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993).

### 3. Discussion

#### a. EHCC's Burden of Proving the Potential for Coverage

EHCC contends that there is potential for coverage under both the Hartford and Scottsdale policies. Both policies insured EHCC against losses arising from any negligent acts or omissions and or breach of fiduciary duty associated[5] with its administration of the EHCC Benefit Plans, and by EHCC's reckoning, the Controller's actions with respect to the EHCC Benefit Plans were at all times either negligent or done without the requisite standard of care. In addition, EHCC contends that all of the Controller's acts were with respect to 'administration.' Administration, as defined by the policies, includes the handling of records, the enrollment or termination of employees, and counseling with respect to EHCC Benefit Plans. Both policies, then, would ostensibly cover a claim that EHCC's Controller inadvertently and negligently failed to process the premium records—i.e., payments—necessary to maintain enrollment in the EHCC Benefit Plans, and unreasonably failed to counsel EHCC employees about their termination from those plans.

Although EHCC's proffered understanding of what it means to "administer" the EHCC Benefit Plans—i.e., 'handling records' and 'counseling'—is somewhat capacious and borders on the "strained" and "absurd," *Bay Cities Paving & Grading*, 5 Cal. 4th 854, the Court does find these terms sufficiently ambiguous as to warrant construction in favor of coverage and against the drafters of the insurance policies—i.e., Defendants. *Cf. Granite Outlet, Inc. v. Hartford Cas. Ins. Co.*, No. 2:14-CV-00575-TLN-EFB, 2015 WL 300729, at *5 (E.D. Cal. 2015) (holding that a claim that employer failed to pay wages did not implicate a similarly-worded definition of "administration."). That is to say, although one would not generally equate the payment of premiums to "the handling of records," or the notification to employees of a lapse in coverage to 'counseling' vis-à-vis

---

[5] The Court recognizes that the scope of coverage under the Scottsdale Policy is broader than that under the Hartford Policy but will construe both together for the purposes of the present analysis.

14

the scope of their coverage, such a reading is not patently outside of the realm of possibility. *See Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984) (citation and internal quotation marks omitted) ("[T]he policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert."). As such, the Court holds that EHCC has borne its prima facie burden of showing a potential for coverage.

### b. Defendants' Burden of Showing that the Underlying Claims fall outside of Coverage

Although the Defendants raise many arguments in opposition to coverage of the Underlying Claims, the Court will resolve the dispute on a singularly dispositive ground.

Both Defendants' policies with EHCC provide for similar, but not identical coverage. Recall that the Scottsdale Policy provides indemnification for "Loss[es]" for which EHCC has become legally responsible to pay by reason of a "Claim" made for a "Wrongful Act," and that the Hartford Policy agreed to provide coverage with respect "those sums that [EHCC] shall become legally obligated to pay as damages because of 'employee benefits injury'."

Both policies condition indemnification on a loss sustained by EHCC 'because of' either an Employee Benefits Injury[6] or Wrongful Act.[7] *See Pacific Ins. Co. Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 589 (2004) (holding that "by reason of" means "because of," and "because of" requires a "direct causal relationship between the fact of liability" and

---

[6] Under the terms of the Hartford Policy, an Employee Benefits Injury is defined as "any injury that arises out of any negligent act, error, or omission in the 'administration'" of EHCC's "'employee benefits program.'"

[7] Under the terms of the Scottsdale Policy, a Wrongful Act is defined as:
- allegations of a breach of the responsibilities imposed on the fiduciaries of a "Sponsored Plan" by the Employee Retirement Income Security Act of 1974 ("ERISA");
- any matter "claimed against [EHCC] solely because of the service of [EHCC] as a fiduciary of a Sponsored Plan …"; or
- "any actual or alleged act, error or omission in the Administration of any Sponsored Plan . . . ."

15

the wrongful act, i.e., a "strict but-for test") (quotation marks and citations omitted).

Defendants argue that EHCC did not become legally responsible to pay the Underlying Claims by reason of a claim made for "Wrongful Acts," or "Employee Benefits Injury." Relying on cases like *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 252 (2012), *as modified on denial of reh'g* (June 12, 2012), *Eaton Vance Mgmt.*, 369 F.3d 584, and *Baylor Heating & Air Condition, Inc. v. Federated Mut. Ins. Co.*, 987 F.2d 415 (7th Cir. 1993), Defendants contend that EHCC became legally responsible to pay the Underlying Claims because it failed to pay premiums into the EHCC Benefit Plans, a liability borne out of a breach of a contractual obligation, rather than a Wrongful Act or an Employment Benefits Injury. In Defendants' eyes, EHCC became legally responsible for the Underlying Claims—not because of its Controller's acts or omissions or his breach of fiduciary duty—but because it had promised its employees company-paid EHCC Benefit Plans as part of their employment with EHCC, and Defendants insist that their policies with EHCC did not extend coverage to breach of contract claims.

The law is on Defendants' side, and the California Court of Appeals's decision in *Health Net* is particularly on point. 206 Cal. App. 4th 232. There, the insured, Health Net, a health insurer, brought a suit against its insurers seeking indemnification for damages claimed by Health Net clients "for policy benefits owed." *Health Net*, 206 Cal. App. 4th at 250. Health Net's clients alleged in their underlying claims that their benefits were undercalculated as a result of, *inter alia*, Health Net's systematically flawed and outdated reimbursement databases. Health Net's insurers objected that Health Net's losses in the underlying claims for "unpaid benefits under [Health Net-administered] health plans," *id.* at 252, were not covered under the policy's Wrongful Act provision, which defined Wrongful Act as "any actual or alleged breach of duty, breach of confidentiality, neglect, error, misstatement, misleading statement or omission." *Id.*

For the Court of Appeal, the question of coverage turned on whether "benefits due to the [Health Net clients] under their health plans [we]re amounts the insurer is legally obligated to pay *as the result of a Wrongful Act*, or if they [we]re amounts th[at Health

Net was] legally obligated to pay their insureds *by contract*, independent of any *Wrongful Act*." *Id.* at 252–53. The distinction made for a critical difference because failure to perform on a contract does not give rise to a loss caused by a wrongful act. *August Ent., Inc. v. Philadelphia Indem. Ins. Co.*, 146 Cal. App. 4th 565, 579 (2007). "Even in the absence of an express exclusion, courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay." *Id.* at 253 (quoting *August Ent.*, 146 Cal. App. 4th at 579).

In conducting the analysis, the *Health Net* court underscored that "[t]he inquiry is not one of motives, but contractual liability." *Id.* at 253. "'The nature of the damages and the risk involved, in light of the particular policy provisions, control coverage.'" *Id.* (quoting *Vandenberg v. Superior Ct.*, 821 Cal. 4th 815, 839 (1999)). The *Health Net* court concluded that, "regardless of whether [Health Net] committed any wrongful act in its use of the Ingenix databases, its use of outdated databases, and its non-Ingenix adjustment misconduct, the fact remains that [Health Net] was *contractually obligated to pay its participants and beneficiaries the full benefits to which they were entitled under their health plans.* These costs cannot be passed on to [Health Net]'s insurers simply because [Health Net] may have committed a wrongful act in its failure to pay them." *Id.*

Here, the Court concludes that EHCC was obligated to pay the Underlying Claims because of its contractual obligations to its employees. Like Health Net, EHCC incurred legal responsibility vis-à-vis the Employee Claimants because it had undertaken to provide them with paid EHCC Benefit Plans, a responsibility it defaulted on. Although EHCC objects that the lapse in premium payments and enrollments were precipitated by the Controller's inadvertence and negligence, that is beside the point. As relevant to this case, the *Health Net* court made clear that "the fact that the breach of the contractual obligation may itself have been negligent does not render it a covered wrongful act." *Id.*; *accord Granite Outlet*, 2015 WL 300729, at *5 n.2; *see also August Ent.,* 146 Cal. App. 4th at 579 ("[T]he mere existence of a mistake or negligent act does not create coverage

under the policy for breach of contract.").

Nor is the Court given pause by EHCC's claims that the Underlying Claims did not state a cause of action for a breach of contract. (*See e.g.*, ECF No. 23-1, at 18; ECF No. 25, at 25-1, at 19.) Courts "consider the nature of the damage and the risk involved, not the name of the causes of action pleaded." *Id.* at 254. For example, as noted by the *Health Net* court, in *Medill v. Westport Insurance Corporation*, 143 Cal. App. 4th 819, 829 (2006), where the insured was sued for negligence and breach of fiduciary duty arising out of its default on a bond obligation, the insured's claim "was held to arise out of a breach of contract," even though "no breach of contract cause of action was actually pleaded." 206 Cal. App. 4th at 254. Here, as in *Medill*, the nature of the damage was contractual, and the risk involved stemmed from the failure to meet contractual promises.

The non-California authorities cited by Defendants give further credence to this conclusion. Take, for example, the First Circuit's decision in *Eaton Vance*, 369 F.3d 584. There, an employer adopted new documents (i.e., the "1984 documents") for its profit-sharing plan without realizing that the documents broadened the eligibility criteria for employees. Unaware of the change in language, the employer failed to extend the plan to other employees and did not pay the additional funds. Upon learning of its mistake, the employer corrected the error, paid the amounts due, and then looked to its errors and omissions insurer for indemnification under a policy that largely mirrors the policies at issue in this litigation.[8]

As here, the employer in *Eaton Vance* argued that coverage existed because it failed to administer the profit-sharing plan in accordance with its terms, which it contended was a breach of fiduciary duty under federal law. However, the First Circuit disagreed, concluding that the employer was required to pay the additional funds not

---

[8] Like the policies at issue here, the policy in *Eaton Vance* covered losses or liabilities incurred by reason of any actual or alleged failure to discharge the employer's duties or to act prudently under federal law governing employee benefit plans, or by reason of any actual or alleged breach of fiduciary responsibility under the same law.

because it breached a fiduciary duty, but because it had agreed to the new plan documents:

> The relevant liability for which [the employer] seeks recovery from its insurer is *not* one for breach of fiduciary duty relative to the belatedly funded employee accounts; rather, [the employer] seeks reimbursement for amounts it paid . . . in satisfaction of its Plan-created obligation to establish and fund those accounts to the level they would have attained had [the employer] initially complied with the Plan. So understood, this obligation cannot be a breach of the obligation; instead, in our view, this obligation derived from the broadened eligibility criteria in the 1984 documents themselves . . . . *That the alleged breach of fiduciary duty resulted in the late payment of funds does not alter the essential fact that the liability was 'incurred . . . by reason of' the adoption of the 1984 documents* . . . . The insurance at issue covers debts 'incurred . . . by reason of,' *inter alia*, a breach of fiduciary duty; it does not cover debts that are 'incurred' through a contract obligation . . . ."

*Id.* at 590–92 (emphasis added). Thus, the First Circuit concluded that "[w]hether or not Eaton Vance breached its fiduciary duties under ERISA by initially failing to administer the Plan in timely accordance with its terms is thus of no important to the relevant causation injury because the underlying obligation for which reimbursement is sought existed *regardless of* whether Eaton Vance first complied with its fiduciary duties or breached them." *Id.* at 590. *Eaton Vance* lends support to the Court's conclusion that the responsibility on EHCC to pay the benefits under the EHCC Benefits Plans arose not because of any negligent acts or breaches of fiduciary duty by the Controller, but because of an independent, contractual obligation to provide its Employees with EHCC Benefit Plans.

The Seventh Circuit's decision in *Baylor Heating*, 987 F.2d 415, further compels dismissal of this action. There, an employer ceased making pension fund payments under a collective bargaining agreement when the agreement expired, believing its obligations to make payments terminated with the agreement. After the pension fund obtained a judgment against the employer for unpaid contributions, the employer sued its insurer for indemnity under a policy providing coverage for injury or damage caused by negligent acts or omissions in the administration of employee benefit programs. There, the Seventh

Circuit rejected as irrelevant the employer's characterization of its failure to fund as an act of "negligent omission," *id.* at 418, and its contestations that it "did not set out purposely to avoid [its] contractual obligations." *Id.* at 419 ("Although this may be true, it misses the point."). "Even though the insured's actions in precipitating the breach may have been careless," those actions, the court remarked, "do not change the contractual nature of the obligation." *Id.* at 419, 420.

Based on the foregoing authorities, the Court concludes that under the policies in this case, the Defendants were not liable for the Underlying Claims. The Court agrees with Defendants that because EHCC incurred its claimed losses as a result of its contractual undertaking toward the Employee Claimants, any claim for indemnification would fall outside the scope of the Hartford or Scottsdale Policies because they cover only breaches of fiduciary duties and negligent, tortious actions.

The Court further holds that the doctrine of reasonable expectations invoked by Plaintiff cannot save its breach of contract claim. (*See* ECF No. 23-1, at 11; ECF No. 25-1, at 12.) First, the reasonable expectations doctrine comes into play only when the language of an insurance policy relevant to a question of coverage is ambiguous. *La Jolla Beach & Tennis Club*, 9 Cal. 4th at 37. As there is no ambiguous policy language to construe—indeed, the meaning of the direct, but-for causation demanded by the policies is well-settled—there is no basis for applying the doctrine in this case. Second, even if resort to the doctrine were appropriate, it would marshal a decision in Defendants' favor.

As the First Circuit noted in *Eaton Vance*, "[i]t makes no sense to permit a dereliction in duty to transform an uninsured liability into an insured event," 369 F.3d at 593; consequently, it would not be reasonable for an insured to expect that an insurance policy providing coverage for negligence or breaches of fiduciary duties would cover a claim that the insured "forgot to pay its bills." *Cincinnati Ins. Co. v. Metropolitan Properties*, 806 F.2d 1541, 1543 (11th Cir. 1986); *see also May Dept. Stores Co. v. Federal Ins. Co.*, 305 F.3d 597, 601 (7th Cir. 2002) ("It would be passing strange for an insurance company to insure a pension plan (and its sponsor) against an underpayment of benefits, not only

because of the enormous and unpredictable liability to which a claim for benefits on behalf of participants in . . . a pension plan of a major employer could give rise, but also because of the acute moral hazard problem that such coverage would create.").[9]

To conclude, although EHCC met its initial burden to demonstrate some potential for coverage, that potential was defeated by Defendants' insistence that the root of EHCC's liability was a breach contractual in nature.  Thus, dismissal must be granted.

EHCC has asked for leave to amend in the event of dismissal.  EHCC contends that is ready to "expand on its allegations in the Amended Complaint as to [Defendants'] breach of duties and the covenant of good faith."  (ECF No. 25-1, at 21 (with respect to Hartford's motion to dismiss); *see* ECF No. 23-1, at 30 (making a similar contention with respect to Scottsdale's motion to dismiss)).  Hartford argues that amendment would be futile because an exclusion under the Hartford Policy for damages "arising out of an insufficiency of founds to meet any obligations under any plan" would apply.  (ECF No. 17-1, at 17.).  However, EHCC's FAC expressly pleaded that EHCC "had sufficient funds to provide the benefits of EHCC Benefit Plans," and EHCC argues that it was not for want of funds that the EHCC Benefit Plans lapsed.  (ECF No. 10, at 9; ECF No. 25-1, at 22.).  Accepting these factual allegations as true, and reading an arguably ambiguous exclusionary provision narrowly, as the Court must, the Court finds that amendment would not be futile.  As a result, the Court **grants dismissal, with leave to amend.**

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim & Declaratory Judgment Claim

The demise of EHCC's breach of contract claim also portends doom for its other two claims.  According to the California Supreme Court, "if there is no potential for coverage, . . . there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the

---

[9]     "'Moral hazard' is the term used to denote the incentive that insurance can give an insured to increase the risky behavior covered by the insurance."  *May Dept. Stores*, 305, F.3d 597, at 601.

insured and the insurer." *Waller*, 11 Cal. 4th at 36. "Thus, because plaintiff['s] breach of contract claim fails, plaintiff['s] claim for breach of the implied duty of good faith and fair dealing necessarily fails as well." *Almazni v. United Fin. Cas. Co.*, No. 514CV00975CASASX, 2015 WL 5680312, at *5 (C.D. Cal. Sept. 24, 2015).

Similarly, EHCC's request for a declaration that it was entitled to coverage for the Underlying Claims rises and falls with its substantive claim to that effect. The "Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action." *Cty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1215–16 (N.D. Cal. 2017); *see also* 28 U.S.C.A. § 2201 (referring to the Declaratory Judgment Act as "remedy"). What's more, "even if an independent cause of action for declaratory relief could be brought in state court, it cannot be brought in federal court." *Muhammad v. Berreth*, No. C 12-02407 CRB, 2012 WL 4838427, at *5 (N.D. Cal. Oct. 10, 2012). Accordingly, because the substantive cause of action has been dismissed, there is no standalone right to the remedy of declaratory judgment.

## IV. Conclusion

In light of the foregoing, Defendants' motions to dismiss are **GRANTED** without prejudice. (ECF Nos. 14, 17.) EHCC may file a second amended complaint which cures the deficiencies outlined in this Order **within 30 days** of the publication of this Order. Plaintiff's ex parte motion is **DENIED** as moot. (ECF No. 18.) The motion hearing set for February 22, 2019 is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: February 20, 2019

Hon. Gonzalo P. Curiel
United States District Judge

18-CV-2462-GPC-MSB